United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE BRICKLAYER LOCAL NO. 7 PENSION TRUST,<br><br>      Plaintiffs,<br>  v.<br><br>GENTRY MASONRY CORP.,<br><br>      Defendant.<br>_____/ | No. C-09-04604 JCS<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** [Docket No. 14] |

## I.  INTRODUCTION

In this ERISA enforcement action, Plaintiffs bring a Motion for Default Judgment (the "Motion") seeking entry of default judgment and an order awarding unpaid withdrawal liability, liquidated damages, attorneys' fees and costs, and interest.  The Motion came on for hearing on Friday, May 7, 2010 at 1:30 p.m.   Plaintiffs submitted additional materials in support of the Motion on May 7, 2010 and May 27, 2010.  For the reasons stated below, it is RECOMMENDED that the Court GRANT Plaintiffs' Motion and that Plaintiffs be awarded the following amounts:
1) $123,469.89 in withdrawal liability;  2) $24,693.97 in liquidated damages; 3) $10,892.41 in interest;  4)$4,808.50 in attorneys' fees; and 5) $425.00 in costs.

## II.  BACKGROUND

This action is brought by the trustees of the Bricklayers Local No. 7 Pension Trust ("the Trust"), which is an employee benefit plan within the meaning of § 3(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3).  Complaint ¶ 3.  Plaintiffs bring this action pursuant to Section 4301(d) of the Employee Retirement Income Security Act ("ERISA") to collect the withdrawal liability of Defendant Gentry Masonry Corporation ("Gentry") arising from its

complete withdrawal from the San Francisco Bricklayers Local No. 7 Pension Plan ("the Plan"), pursuant to Sections 4201-4203 and 4219 [29 U.S.C. §§ 1381-1383 and 1399].

Plaintiffs allege that Gentry is a California Corporation based in Santa Rosa California. Complaint ¶ 4. Plaintiffs further allege that Gentry is a building and construction industry employer and that it entered into a collective bargaining agreement with the Allied Craftworkers Union Local No. 3 ("the Union"). Complaint ¶¶ 5- 6.[1] Under that agreement, Gentry was required to make employee benefit contributions to the Plan. Complaint ¶ 7-8. As of July 1, 2005, however, Gentry permanently ceased its obligation to make employee benefit contributions under the Plan and therefore experienced a complete withdrawal from the Plan within the meaning of Section 4203(b) of ERISA. Complaint ¶ 8.

Subsequently, Plaintiffs notified Gentry of its withdrawal liability. *Id*. ¶ 8.[2] According to Plaintiffs, Gentry and the Trust agreed that Gentry would pay the withdrawal liability by making twelve quarterly payments of $11,812.46, commencing February 15, 2009, and one final quarterly payment in the amount of $5,103.73. Complaint ¶ 9. The sum of the installment payments included interest on the declining principal balance calculated at an annual rate of 6.0%. Declaration of

---

[1] At oral argument, Plaintiffs' counsel explained that the discrepancy between the names of the Union ("No. 3") and the Pension Plan ("No. 7") is the result of a consolidation of Union Local No. 3 and Union Local No. 7.

[2] In the Complaint, Plaintiffs alleged that "[b]y the notice attached hereto as Exhibit A, the Trust . . .notified [Defendant] of its liability . . .of $135,286.35." The notice was not, however, attached to the Complaint. At oral argument, the Court requested that Plaintiffs provide a copy of the notice referenced in the complaint. In response, on May 10, 2010, Plaintiffs provided a copy of a June 27, 2008 letter sent by the Plan Administrator to Gentry. *See* Second Declaration of Kent Khtikian in Support of Plaintiff's Application for Judgment by Court on Default of Defendant ("Khtikian Supp. Decl."), Ex. 5. That letter was entitled "Notice and Demand for Payment of Withdrawal Liability." The amount of withdrawal liability stated in the letter, however, was $145,134.58 rather than the amount alleged in the complaint. Consequently, the Court requested an additional declaration by the Plan Administrator explaining the discrepancy and verifying that the amount stated in the Complaint was accurate. In response, Plaintiffs submitted a declaration by David Venuti, who has provided actuarial services for the Plan since 1988 and who calculated the amount of the withdrawal liability. *See* Second Declaration of David Venuti in Support of Plaintiff's Application for Judgment by Court on Default of Defendant ("Venuti Supp. Decl."). Venuti explains that he initially calculated Gentry's withdrawal liability as $145,135.00 but that he adjusted the number downward, to the amount alleged in the complaint, after Gentry's counsel challenged the inclusion in the calculation of vested liability for disability and preretirement death benefits. *Id*., ¶ 4. Venuti further states that the "calculation of withdrawal liability, the quarterly payments schedule and the interest rate thereon were performed in accordance and pursuant to the Employee Retirement Income Security Act of 194, Title IV, Subtitle E, Part 1 and the regulations thereunder promulgated by the PBGC." *Id*., ¶ 5.

David Venuti in Support of Plaintiffs' Application for Judgment by Court on Default of Defendant ("Venuti Decl.") ¶ 3. Gentry paid the first installment, due February 15, 2009, but did not pay the second quarterly payment, due May 15, 2009, or any payments thereafter. Complaint ¶¶ 9-10. Plaintiffs sent Gentry a Notice of Default in a letter dated June 12, 2009. Complaint, Exhibit 1.

Plaintiffs filed this action on September 29, 2009, seeking an award of Gentry's unpaid withdrawal liability, 20% liquidated damages, interest, attorneys' fees and costs. The complaint was served on Dennis Bryne, as Gentry's registered agent for service of process, on November 5, 2009. Declaration of Kent Khtikian in Support of Plaintiff's Application for Judgment by Court on Default of Defendant ("Khtikian Decl."), ¶¶ 3-4. Gentry did not answer or otherwise appear and the Clerk entered Gentry's default on December 18, 2009. Plaintiffs filed the instant motion seeking entry of default judgment on February 3, 2010.

In the Motion, Plaintiffs ask the Court to enter default judgment against Gentry and award the following damages: 1) $123,469.89 in unpaid withdrawal liability, that is, $135,286.35 minus the installment payment of $11,812.46 that Gentry paid on March 6, 2009; 2) $24,693.97 in liquidated damages; 3) $10,892.41 in interest (calculated at a rate of 10% per year, simple interest, on $123,469.89 for the period May 15, 2009 to April 2, 2010); 4) $4,808.50 in attorneys' fees; and 5) $425.00 in costs.

### III. ANALYSIS

#### A. Adequacy of Service of Process

As a preliminary matter, where entry of default judgment is requested, the Court must determine whether service of process was adequate. *Bank of the West v. RMA Lumber Inc.*, 2008 WL 2474650 (N.D.Cal., 2008). Plaintiffs have presented evidence that the complaint was served on Gentry's agent for service of process, in accordance with Rule 4(h) of the Federal Rules of Civil Procedure (providing that a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process"). Therefore, the Court finds that service of process was adequate.

### B.      Entry of Default Judgment

Plaintiffs have applied for a default judgment in this action on the basis that Defendants have failed to plead or otherwise defend or appear after valid service.  Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment once the clerk, under Rule 55(a), has entered the party's default based upon a failure to plead or otherwise defend the action.  The Court is free to consider a wide range of factors in deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *see also* Wright & Miller, *Federal Practice and Procedure*, Civil § 2685.

Where a default judgment is deemed appropriate, defendants "are deemed to have admitted all well-pleaded factual allegations contained in the complaints."  *DirecTV, Inc. V. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986)).

On balance, the *Eitel* factors favor entry of default judgment in this case.  Plaintiffs made several demands for payment before initiating this action, to no avail.  Thus, failure to enter default judgment would result in prejudice to Plaintiffs.  Nor is there any evidence in the record suggesting that Gentry's failure to appear is a result of excusable neglect.

Further, the claims are well-pleaded.  In particular, Plaintiffs have brought their claim under the Multiemployer Pension Plan Amendments ("MPPA") to ERISA, which provide that "an employer [that] withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal . . . is liable to the plan in the amount determined under this part to be the withdrawal liability."  29 U.S.C. § 1381(a).  Where an employer had an obligation under the Plan to make contributions to a pension trust fund for work performed in the building and construction industry, as is alleged here, a complete withdrawal occurs under the following conditions:

(b) Building and construction industry

(1) Notwithstanding subsection (a) of this section, in the case of an employer that has an

4

obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs only as described in paragraph (2), if--

(A) substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry, and

(B) the plan--

(i) primarily covers employees in the building and construction industry, or

(ii) is amended to provide that this subsection applies to employers described in this paragraph.

(2) A withdrawal occurs under this paragraph if--

(A) an employer ceases to have an obligation to contribute under the plan, and

(B) the employer--

(i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or

(ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

29 U.S.C § 1383(b).   Plaintiffs have alleged that pursuant to § 1383(b), Gentry's obligations to contribute ceased as of July 1, 2005 and have presented evidence that Gentry continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required. *See* Declaration of Dave Jackson in Support of Plaintiff's Application for Judgment by Court on Default of Defendant ("Jackson Decl."). The Court concludes that Plaintiffs have stated a claim for withdrawal liability under § 1381(a).

Accordingly, it is recommended that default judgment be entered against Gentry.

**C.     Remedy**

**1.     Overview of Scheme for Calculating and Collecting Withdrawal Liability**

The Supreme Court described the scheme for calculating and collecting withdrawal liability under the MPPA as follows:

> In brief, the Act sets the total amount of "withdrawal liability" at a level that roughly matches "the employer's proportionate share of the plan's 'unfunded vested benefits.' " *R.A. Gray & Co.*, 467 U.S., at 725, 104 S.Ct., at 2715 (quoting 29 U.S.C. § 1381(b)(1)); see § 1391. The employer must, at the least, make a series of periodic payments toward that total liability. § 1399(c)(1)(C), (c)(3). Payments are set at a level that approximates the periodic contributions the employer had made before withdrawing from the plan. § 1399(c)(1)(C). Interest accrues from the first day of the plan year following withdrawal. *See Milwaukee*

5

> *Brewery Workers' Pension Plan*, 513 U.S., at 421, 115 S.Ct., at 987-988. Payments can run for a period of up to 20 years, 29 U.S.C. § 1399(c)(1)(B), but the employer may prepay the outstanding principal, plus accrued interest, at any time. § 1399(c)(4).
>
> The Act does not call upon the employer to propose the amount of withdrawal liability. Rather, it places the calculation burden on the plan's trustees. The trustees must set an installment schedule and demand payment "[a]s soon as practicable" after the employer's withdrawal. § 1399(b)(1). On receipt of the trustees' schedule and payment demand, the employer may invoke a dispute-resolution procedure that involves reconsideration by the trustees and, ultimately, arbitration. §§ 1399(b)(2), 1401(a)(1). If no party requests arbitration, the installments become "due and owing" on the trustees' schedule. § 1401(b)(1). Even if the employer challenges the trustees' withdrawal liability determination, however, it still must pay according to the trustees' schedule in the interim under the statute's " 'pay now, dispute later' collection procedure." *Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 800 F.2d 641, 642 (C.A.7 1986) (per curiam).

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California*, 522 U.S. 192, 196-197 (1997).

### 2.     Damages Available for Failure to Pay Withdrawal Liability

In the Motion, Plaintiffs request an award of: 1) the unpaid withdrawal liability; 2) interest on the unpaid withdrawal liability; 3) liquidated damages; and 4) attorney's fees and costs. Plaintiffs are entitled to all of these types of damages under 29 U.S.C. § 1451(b), which provides that, "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 515 [29 U.S.C. § 1145] )." The following damages are available where an employer fails to pay required contributions: 1) unpaid contributions;  2) interest on the unpaid contributions; 3) liquidated damages as provided by the plan (not to exceed 20% of the unpaid contributions); and 4) reasonable attorney's fees and costs. 29 U.S.C. § 1 132(g)(2).  Therefore, Plaintiffs may recover these types of damages on their claim for unpaid withdrawal liability.  The appropriate amount of each type of damages is discussed below.

### 3.     Unpaid Withdrawal Liability

Plaintiffs have presented evidence that upon Gentry's complete withdrawal from the Plan, they sent Gentry a notice of its withdrawal liability, in the amount of $145,135.00, along with a payment schedule, calculated by actuary David Venuti.  In addition, Plaintiffs have presented evidence that Plaintiffs reduced the amount of withdrawal liability to the amount sought in the complaint and the Motion, that is $135, 286.35, after Gentry's counsel challenged Mr. Venuti's

6

calculation. The Court concludes that this amount is correct based on the facts that: 1) Venuti has more than 20 years of experience as an actuary for the Bricklayers Local No. 7 Pension Trust; 2) Venuti states in his declarations that he calculated the withdrawal liability in accordance with ERISA, Title IV, Subtitle E, Part 1 and the regulations thereunder promulgated by the PBGC; and 3) Gentry implicitly conceded that it owed $135,286.35 when it made the May 6, 2009 payment discussed above. Thus, taking into account the installment payment of $11,812.46 made by Gentry before it defaulted, Gentry owes Plaintiffs $123,469.89 in unpaid withdrawal liability, which should be awarded in full.

### 4. Interest

Plaintiffs seek $10,892.41 in interest, calculated at a rate of 10% per year, simple interest, on $123,469.89 for the period May 15, 2009 to April 2, 2010. This amount should be awarded in full because both the starting date of May 15, 2009 and the 10% rate are correct. In particular, May 15, 2009 is consistent with the regulations for calculating interest on unpaid withdrawal liability, which provide as follows:

> Except as otherwise provided in rules adopted by the plan, the due date from which interest accrues shall be, for an overdue withdrawal liability payment and for an amount of withdrawal liability in default, the date of the missed payment that gave rise to the delinquency or the default.

29 C.F.R. § 4219.32. As the first unpaid installment was due on May 15, 2009, that is the starting date for the interest calculation. The rate of 10% is consistent with the Plan Trust Agreement, Article V, Section A(2). *See* Khtikian Decl. ¶ 6 (quoting section ); *see also* 29 U.S.C. § 1132(g)(2) (allowing for an award of interest at the rate specified under the plan). Therefore, Plaintiffs should be awarded $10,892.41 in interest.

### 5. Liquidated Damages

Plaintiffs request $24,693.97 in liquidated damages, that is, 20% of the unpaid withdrawal liability. This amount is consistent with the Trust Agreement, which provides for 20% liquidated damages. *See* Khtikian Decl. ¶ 6. Further, ERISA permits an award of liquidated damages provided under the plan up to 20% . 29 U.S.C. § 1132(g)(2)(C)(ii). Therefore, it is recommended that this amount be awarded in full.

7

### 6. Attorneys' Fees and Costs

Plaintiffs request $4,808.50 in attorneys' fees and $425 in costs. The amount of attorneys' fees is based on 16.3 hours of work by Mr. Khtikian, whose time sheets have been provided, at a rate of $295.00/hour. *See* Khtikian Decl. ¶ 7 & Ex. 3. Costs consist of $350.00 for the filing fee and $75.00 for service. Khtikian Decl. ¶ 8 & Ex. 4. These amounts should be awarded in full. First, Plaintiffs are entitled to the attorneys' fees and costs under ERISA and the provisions of the Trust Agreement. *See* 29 U.S.C. § 1132(g)(2); Khtikian Dec..¶ 6. Second, with respect to attorneys' fees, the Court has reviewed the time sheets submitted by Plaintiffs and finds both the time expended on the case and the hourly rate sought to be reasonable. Finally, the costs requested by Plaintiffs are expressly allowed under Civil Local Rule 54-3(a). Therefore, it is recommended that the attorneys' fees and costs requested by Plaintiffs be awarded in full.

## IV. CONCLUSION

For the reasons stated above, it is RECOMMENDED that default judgment be GRANTED. Plaintiffs should be awarded the following amounts: 1) $123,469.89 in unpaid withdrawal liability; 2) $24,693.97 in liquidated damages; 3) $10,892.41 in interest; 4)$4,808.50 in attorneys' fees; and 5) $425.00 in costs.

Dated: June 2, 2010

JOSEPH C. SPERO
United States Magistrate Judge